UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANICE YVONNE RADER,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Respondent. | Case No. 2:17-CV-00131-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Currently pending before the Court for its consideration is Janice Yvonne Rader's Petition for Review of the Respondent's denial of social security benefits, filed March 22, 2013. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand to the Commissioner with further instructions.

# PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on September 4, 2013. The application was denied initially and on reconsideration, and a hearing was held on October 29, 2015, before Administrative Law Judge (ALJ) R.J. Payne. After hearing testimony from Petitioner, Daniel R. McKinney

**MEMORANDUM DECISION AND ORDER - 1**

Sr., vocational expert, and Lynne Jahnke, medical expert, ALJ Payne issued a decision finding Petitioner not disabled on November 15, 2015. Petitioner timely requested review by the Appeals Council, which denied her request for review on January 23, 2017.

Petitioner appealed this final agency decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of the hearing, Petitioner was 41 years of age. Petitioner has a college degree, and her prior employment experience includes work as a sales clerk, a food truck driver helper, a brick cleaner, and a packer. She claims she became disabled on August 29, 2013 and applied for disability benefits from that date forward.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date, August 29, 2013. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's diabetes mellitus type II, hypertension, obesity with a body mass index of 36, right shoulder degenerative disease, degenerative disc disease of the lumbar spine, and migraine headaches severe within the meaning of the Regulations. (AR 12); 20 C.F.R. 404.1520(c) and 416.920(c).

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ considered Petitioner's impairments, both singly and in

combination, and found the record did not document clinical findings of abnormality or consistent subjective reports or symptoms of limitations that suggested any impairment that met or equaled a listing. The ALJ further found that no acceptable medical source opined that Petitioner's conditions met or equaled a listing. The ALJ specifically considered and discussed Listing 1.04 (disorders of the spine) and Listing 1.02 (major disfunction of a joint), 20 C.F.R. § 404.1520(d).

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner has the RFC to perform light exertional level with, with some limitations, and that she can perform her past relevant work as a packager-hand. (AR 18.)

The ALJ went on, at step five, to conclude that the Petitioner also retains the capacity to make an adjustment to other work that exists in significant levels in the national economy—considering the claimant's residual functional capacity, age, education, and work experience. Specifically, the ALJ concluded that she can perform light work with limitations. Examples of jobs within such limits provided by the vocational expert were production assembler, electronics worker, and garment sorter. (AR 18-19.) The vocational expert identified also sedentary level occupations, including call-out operator and table worker. (AR 19.) Accordingly, the ALJ concluded Petitioner was not under a disability from August 29, 2013, the alleged onset date, through November 16, 2015, the date of his decision, and issued a finding of not disabled.

# STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's

**MEMORANDUM DECISION AND ORDER – 4**

claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

Petitioner stands on the single issue of whether her migraines, an unlisted impairment, meet or equal a listing. She argues the ALJ erred at step three because her chronic migraine headaches meet medical equivalence for an unlisted condition. (Dkt. 15 at 4.) Petitioner asserts that the ALJ committed legal error by failing to consider whether her headaches meet or equal Listing 11.02—and instead held her to "a nonexistent standard" by requiring findings of significant objective neurological abnormality, or neurological testing, such as Medical Resonance Imaging (MRI), to establish that she has migraine headaches. (Dkt. 17 at 1.) Petitioner asserts that her medical records document that she has chronic disabling headaches and migraines satisfying the requirements set out in the Social Security Administration's Program Operations Manual System (POMS). The Court will address this issue below.

**II.     Step Three – Meet or Medically Equal a Listing**

**MEMORANDUM DECISION AND ORDER - 5**

When an ALJ finds a claimant has a severe impairment at step two, step three of the process requires the ALJ to consider whether such severe impairment meets or medically equals any listing in 20 C.F.R. Part 404, Listing of Impairments. *See Dunlop v. Colvin*, No. 15-CV-02139-NYW, 2016 WL 5405208, at *6 (D. Colo. Sept. 28, 2016). For a claimant's impairment to meet the requirements of a listed impairment, all the criteria of that exact listing and the duration requirement of the listing must be satisfied. 20 C.F.R. §§ 404.1525(c)(1-3), 416.925(c)(1-3). "Medical equivalence will be found 'if the medical findings are at least equal in severity and duration to the listed findings.'" 20 C.F.R. § 404.1526(a); *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir.1990). Further, equivalence depends on medical evidence only; age, education, and work experience are irrelevant. *Id.* at § 404.1526(c). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not" equal a listed impairment. *Lewis*, 236 F.3d at 512 *Marcia* at 176.

The SSA's POMS sets forth multiple ways for the SSA to determine medical equivalence where the claimant has an impairment that is not described in the Listing of Impairments. POMS DI 24505.015(B)(2)(b). POMS provides also the following rationale requirements for use in determining medical equivalence for unlisted impairments; the ALJ should: (1) discuss the claimant's impairment, medical findings, and non-medical findings; (2) discuss the listing considered the most closely analogous listing; (3) compare the findings of claimant's impairment to the findings of the most closely analogous listing; (4) explain why the findings of the claimant's impairment are at least

**MEMORANDUM DECISION AND ORDER – 6**

of equal medical significance to the most closely analogous listing; and (5) cite the most closely analogous listing. *Id.* at 24505.015(B)(6)(c).

Of note, out of all unlisted impairments, the SSA uses chronic migraines to provide an illustrative example of how the above rationale could be applied:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her ADLs. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.02, Epilepsy, non- convulsive. Therefore, 11.02 is the most closely analogous listed impairment. Her findings are at least of equal medical significance as those of the most closely analogous listed impairment. Therefore, the claimant's impairment medically equals Listing 11.02.

POMS DI 24505.015(B)(7)(b), Example 2.

As the example provides, according to SSA policy, the most analogous listing for determining medical equivalence for migraines is Listing 11.02. When the ALJ rendered his decision in November of 2015, Listing 11.02 provided:

> 11.02 Epilepsy-nonconvulsive epilepsy (petit mal, psychomotor or focal) documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § 11.02 Pt. 404, Subpt. P. App.1 (effective through Sept. 28, 2016).[1]

---

[1] The SSA revised the medical criteria for evaluating epilepsy on Sept. 29, 2016. The Court will use the version of Listing 11.02 in effect at the time of the ALJ's decision. Later amendments to Listing

**MEMORANDUM DECISION AND ORDER - 7**

Courts analyzing this issue have considered SSA National Q&A number 09-036, posted Dec. 15, 2009, which provides further information about the relationship of Listing 11.02 to migraine headaches:

> [L]isting 11.02 … is still the most analogous listing for considering medical equivalence for migraine headaches. The Q&A sets out a non-exhaustive list of clinically accepted indicators of migraine headache diagnosis: (1) a headache lasting 4 to 72 hours if untreated or unsuccessfully treated; (2) unilateral, pulsating (throbbing) quality and moderate or severe pain, worsened by routine physical activity or causing avoidance of such activity; and (3) experiencing nausea, vomiting, photophobia, or phonophobia during the headache (only one needs to be experienced).

*Mesecher v. Berryhill*, No. 4:15-CV-0859-BL, 2017 WL 998373, at *4 (N.D. Tex. Mar. 15, 2017) (internal quotations omitted) (citing SSA National Q&A 09-036; also citing *Plummer v. Colvin*, No. CV-13-08282- PCT-BSB, 2014 WL 7150682, at *10 (D. Ariz. Dec. 16, 2014); and *Miller v. Astrue*, No. CV-09-01871- PHX-JAT, 2011 WL 671752, at *12 (D. Ariz. Feb. 17, 2011)).

Thus, the SSA provides specific guidance regarding the applicability of Listing 11.02 to the step three medical equivalence analysis for migraine headaches. Given this, it is no surprise that an ALJ's failure to specifically consider Listing 11.02 constitutes legal error when a claimant's migraine headaches was found to be a severe impairment at step two. *Edwards v. Colvin*, No. 3:14-cv-05338-KSL, 2014 WL 7156846, at *3 (W.D. Wash. Sept. 15, 2014); *Spiteri v. Colvin*, No. 3:16-CV-01937-LB, 2016 WL 7425924, at *10 (N.D. Cal. Dec. 23, 2016); *Mesecher v. Berryhill*, 2017 WL 998373, at *5 (the

---

11.02 need not be addressed to resolve the Petitioner's appeal.

**MEMORANDUM DECISION AND ORDER – 8**

failure to consider a relevant listing is error).

In the *Edwards* appeal, the ALJ considered the severity of the claimant's migraine headaches in relation to the Listing of Impairments but did not specifically consider Listing 11.02. *Edwards* at *3. The court pointed out, as Petitioner does here, that the "Commissioner's own policy guidelines have noted that Listing 11.02 is the most closely analogous listed impairment to migraine headaches." *Edwards* at *10 (citing to POMS DI 24505.015(B)(7)(b)). The court found evidence in the record that there was "at least a reasonable probability that the plaintiff's migraines might have been found to be medically equivalent to Listing 11.02." *Id.* Despite such evidence, the ALJ did not specifically consider or specifically mention Listing 11.02 in her consideration of the severity of claimant's migraines in relation to the Listing of Impairments. Provided this, the court concluded that such failure constituted legal error. *Id.*

In the *Spiteri* appeal, the ALJ also failed to specifically mention Listing 11.02. *Spiteri* at *10. There, the ALJ determined that the record evidence was insufficient to establish the level of severity described in any listing. *Id.* In defense of the ALJ's decision, the Commissioner contended that, even if the ALJ did err by failing to specifically consider Listing 11.02, the claimant had not presented medical evidence of her migraine headaches sufficient to satisfy the criteria of Listing 11.02 anyway. *Id.* The Commissioner specifically pointed to lack of evidence of "intractable migraines" or evidence of "abnormal MRI." *Id.* However, the court clarified that "there is no test for migraine headaches" and that "when presented with documented allegations of symptoms

**MEMORANDUM DECISION AND ORDER - 9**

which are entirely consistent with symptomatology for evaluating migraines, the ALJ cannot reject the claimant's evidence on the mere absence of objective supporting evidence especially when […] supported by medical treatment records." *Id*.

As in the cases above, the ALJ's failure to consider the applicable listing for Petitioner's migraines here was legal error. The ALJ in this case did not mention Listing 11.02. Notably, the ALJ did not even specifically discuss or even mention Petitioner's severe migraine headaches in his step three review. (AR 12-13.) Instead, the ALJ limited his discussion solely to listings related to Petitioner's degenerative disc disease of the lumbar spine and right shoulder degenerative joint disease. *Id.* The failure to recognize the applicability of 11.02, especially considering specific guidance provided by the SSA's POMS and Q&A number 09-036, is harmful error when reviewed alongside the available record evidence of Petitioner's migraine headaches.

    A.    *Evidence of Petitioner's Migraine Headaches*

Petitioner testified at the hearing that she began having somewhat frequent migraine headaches in 2003, after she had a stroke, and that they progressively worsened since that time. (AR 47.) She testified also that they began to get much worse in 2013. *Id.* at 48-50. However, because she did not have insurance, she did not go to a neurologist and instead visited a free clinic. *Id.* Petitioner testified further that, since September 2015, the headaches caused nausea and double vision as often as two to three times a week, each episode lasting up to 24 hours. *Id.* at 51. Additionally, she testified that her migraines had not responded to medication, and when she got a headache, she retreated to

**MEMORANDUM DECISION AND ORDER – 10**

her room to sleep through the duration of the headache. *Id.* at 52. Petitioner testified also that she stopped working in August of 2013 because the combination of her headaches and back pain made it impossible for her to perform her duties at work. *Id.* at 56.

The medical record establishes that Petitioner first reported migraine pain to a physician, Dr. Margaret Russell, M.D., on October 1, 2014. (AR 346.) The treatment notes from that visit reflect Petitioner reported recurring migraine symptoms. *Id.* Symptoms, in addition to the migraine pain, included blurred vision, visual aura, and vertigo. *Id.* At that time, Petitioner reported getting migraines two to three times per week. *Id.* However, she also reported taking migraine medication, including ketoriac, which was noted to have worked in the past. *Id.* She was prescribed new migraine medication during the October 1, 2014 assessment. *Id.*

The next medical record regarding Petitioner's migraine headaches is from October 24, 2014—when she reported continuing chronic migraine headaches to Dr. Russell. (AR 353.) At that visit, she stated symptoms began a year prior and were poorly controlled. *Id.* Petitioner reported also that even with medication her migraines lasted three to four hours. Petitioner was seen again by Dr. Russell for migraine related pain in November of 2014. (AR 350.)

On March 5, 2015, Petitioner established herself as a patient of Dr. Timothy Bonine, M.D. The medical record reflects she saw Dr. Bonine for migraine related issues five times between that date and October 1, 2015. (AR 367-71.) In treatment notes from April 22, 2015, Dr. Bonine reported that Petitioner's main health problem was continued

migraines. (AR 368.) He noted further that she had a stroke in 2003, at which point the frequency of her migraines increased markedly. *Id.* Further, Dr. Bonine recorded that Petitioner had failed on all triptan-class medications[2] up to that point. *Id.* The records show that Petitioner tried multiple medications, including ergotamine, NSAIDs, Midrin, Fioricet, and Cafergot, but had no positive response. (AR 367-68.)

On October 15, 2015, Dr. Bonine completed a RFC questionnaire addressing the history of Petitioner's migraine headaches and their impact on her ability to work. (AR 374-78.) Therein, he reported Petitioner experiencing severe frontal migraines with daily visual disturbance. (AR 374.) He stated Petitioner was not a malinger, reiterated that she had failed on all triptan-class medications, and thus, her prognosis was poor. He reported also, that due to the continued and expected ineffectiveness of migraine medications, Petitioner's migraine headaches could be expected to last at least 12 months. *Id.* at 376.

A. *The ALJ's Discussion of Petitioner's Migraines*

The ALJ first addressed the impact and severity of Petitioner's migraine headaches within his discussion of her RFC at step four. (AR 13-14.) He referenced Petitioner's hearing testimony that her migraines began in 2003 and progressively worsened to the point that symptoms, uncontrolled by medication, prevented her from working. *Id.* at 14. The ALJ, however, questioned the sincerity of Petitioner's statements

---

[2] Triptans are a class of medications used to treat migraines that […] are designed to stop a migraine attack or cluster headache after the attack begins. *See* NATIONAL HEADACHE FOUNDATION, Facts About Triptans, How Triptans Work, https://headaches.org/2007/11/19/facts-about-triptans/ (last visited August 17, 2018).

**MEMORANDUM DECISION AND ORDER – 12**

regarding the intensity, persistence, and limiting effects of the symptoms because (1) she had never been hospitalized for migraines; (2) had only undergone conservative treatment for migraines; and (3) cited back pain as the main factor preventing her from work during her Consultive Physical Examination Report, dated December 4, 2013.[3] (AR 14-16.)

The ALJ also gave little weight to the headache questionnaire completed by Petitioner's treating physician, Dr. Bonine. The ALJ noted that Dr. Bonine had made no objective findings of physical abnormalities that would cause the headaches and pointed to the fact that Dr. Bonine had seen Petitioner just six times between March 2015 and October 2015. (AR 16-17.)

Although the ALJ provided such reasoning to support his assessment of the impact of Petitioner's migraines on her RFC at step four, as explained above, he first failed at step three to consider whether Petitioner's severe impairment of migraine headaches met or medically equaled a listing. Furthermore, there is evidence in the record that there was at least a reasonable probability that Petitioner's migraines might have been found to be medically equivalent to Listing 11.02 had it been properly considered. Notably, Listing 11.02 does not require objective findings of neurological or physical abnormality. Boiled down, Listing 11.02 requires three main elements: (1) a detailed documentation of pain

---

[3] In 2013, Petitioner reported to a consultive examiner that back pain was the primary reason she could not work. (AR 16.) As set forth above, during the 2015 hearing, Petitioner testified that the *combination of back pain and migraines* prevented her from continuing to work. (AR 56.) Within his opinion, however, the ALJ commented that Petitioner "testified that the main reason she could not work was due to migraines." (AR 17.) The ALJ found Petitioner's subjective complaints not entirely credible because of the difference. *Id.* However, as the hearing testimony reflects, Petitioner did not completely change her answer, as characterized by the ALJ—instead, she added that migraines combined with back pain resulted in her inability to continue working.

**MEMORANDUM DECISION AND ORDER - 13**

and resultant symptoms; (2) occurrence of the impairment at least twice a week during a period of three consecutive months of prescribed treatment; and (3) that the impairment significantly alters a claimant's awareness or daily activity.

As set forth above, Petitioner documented her migraine pain and symptoms during her testimony at the hearing, and through provision of her medical records and other evidence. It is clear from such evidence that Petitioner was taking prescribed medication for her migraine headaches regularly from the first visit to a physician to address her migraines, on October 1, 2014, through the date of the administrative hearing, October 29, 2015. It is also clear that, during that period of time, Petitioner experienced migraine headaches at least twice weekly despite taking medication. Further, although Petitioner was first treated by a physician for migraine headaches in 2014, her testimony that the migraine headaches increased in frequency after she had a stroke in 2003 is consistent with reports she made to physicians during office visits.

At the very least, the records from Dr. Bonine from March 2015 through October 2015, establish Petitioner was consistently treated with medication during the relevant time for a period of more than three months with no improvement. The same records also show that Petitioner tried multiple medications, including ergotamine, NSAIDs, Midrin, and Fioricet, and had no positive response. (AR 367.) Provided this information, there is also evidence that Petitioner's migraines significantly interfered with daily life activities. In the face of such evidence, the ALJ's failure to discuss whether Petitioner's migraine headaches met or equaled Listing 11.02 constituted legal error.

## CONCLUSION

Based on the foregoing, the Court finds there is sufficient evidence in the record to evaluate Petitioner's migraine headaches under Listing 11.02. Accordingly, it was error for the ALJ not to consider Listing 11.02 when evaluating whether Plaintiff is disabled at step three of the sequential process. For this reason, in its discretion, the Court finds that remand is appropriate to remedy this error and for the ALJ to properly consider whether Petitioner's migraines are medically equivalent to Listing 11.02. Therefore, the Court reverses the Appeal's Council's decision and remands with instructions to the ALJ for further proceedings consistent with this opinion.

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Petition for Review (Dkt. 1) is **GRANTED** and the decision of the Commissioner is **REVERSED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: August 27, 2018

Candy W. Dale
U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 15**